**THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**
**501 "I" STREET, SACRAMENTO 95814**

PLAINTIFF/PETITIONER:
**LUELLA VAUGHN**

DEFENDANTS:

**WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A., CITIMORTGAGE INC., AND CR TITLE SERVICES, INC.**

And all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Petitioner's title, or any cloud upon Petitioner's title thereto.

Real Party In Interest, Intervenor:
**Luella Vaughn**

**FILED**

OCT 31 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ____________
DEPUTY CLERK

▲ COURT USE ONLY ▲

**TRIAL BY JURY DEMANDED**

Case No.: 2:11-0873 MCE CKD PS

Division:



Stamp

Attorney or Party Without an Attorney
Name: **LUELLA VAUGHN**
Address: **505 FRANESI WAY**
**SACRAMENTO, CA 95838**
Phone: **916. 838.7640**
E-mail:

# 1st AMENDED

# PETITION TO SET ASIDE TRUSTEE SALE and VOID FORECLOSURE CLAIM, QUIET TITLE, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW **Luella Vaughn**, a non-attorney, real woman, and Real Party in Interest, a non-corporate entity, as agent for **LUELLA VAUGHN** corporate entity defined as a United States Vessel (hereinafter Petitioner), appearing specially, not generally, by special rules, "Restricted Appearance," in the original, in the alternative, as a matter of right and privilege, to allege rights under the CALIFORNIA Constitution, by verified oath and solemn affirmation of complaint, pursuant to special rules, exercising Petitioner's procedural due process. Defendant's have been making false claims, contrary to the record, contrary to the statues regarding real estate and foreclosures and have denied Petitioner's due process.

This PETITION to SET ASIDE TRUSTEE SALE, VOID FORECLOSURE CLAIM, AND QUIET TITLE, AGAINST ALL KNOWN DEFENDANTS AND FOR DECLARATORY AND INJUNCTIVE RELIEF; and notice is now given for the protection of Petitioner's person, property, estate, and trust, hereby enters her Amended complaint of injured party, violation of the laws of the forum in California Republic, United States of America and the Law of Nations.

The Plaintiff wishes to point out to the Court that she is **NOT** an individual schooled in the law, but as an individual exercising her rights under law for the proper action of the Court from misrepresentative actions on the part of the Defendants. As such, the Plaintiff asks the court to take **judicial notice** (**Rule 201** of the **Federal Rules of Evidence** and **California Rules of Evidence**) of the **enunciation of principles** stated in **King v. Knoll (No. 04-04149-JAR)**, **Whitney v. State of New Mexico (113 F.3d 1170)**, and **Haines v. Kerner (404 U.S. 519)**, wherein the courts are directed that those who are unschooled in law making complaints/pleadings shall have the court look to the **substance** of the complaint/pleadings **rather than** the form and hereby makes the following pleadings/notices in the above referenced matter **WITHOUT** waiver of any rights, claims or defenses.

The **Petitioner as Affiant herein**, without waiving **ANY** rights and while reserving **ALL** rights and legal issues does solemnly affirm that she is of lawful age, being of **sound mind** and **competent to make this affidavit** and willing to testify in open Court, that the statements herein are from her own **personal**, **first hand knowledge** of the information and facts contained herein, and are true and correct in substance and in fact, and that those matters cited herein are believed to be true as reported and as further grounds for the relief sought, states as follows:

## JURISDICTION

1. This Court has jurisdiction over this proceeding pursuant to State Statute and Under the California Rules of Civil Procedure and this matter arises out of ownership and possession of real estate property located in the City and County of Sacramento California. This Court has previously presided over this matter. All the parties are either domiciled or are doing business in this district in the State of California.

## STANDING

2. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

3. Petitioner, as a secured party on a properly executed warranty deed is the one true owner fully vested with all rights to said property and therefore has standing to bring this complaint.

## VENUE

4. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein. Venue of this matter is proper in that the **UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA** has presided over the matter previously and has issued Magistrates Finding and recommendations.

## PARTIES

5. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

6. **Luella Vaughn**, who is domiciled in California State. **Luella Vaughn** maintains a mailing address at **505 FRANESI WAY in Sacramento, California near [95838]**.

7. The Defendants in this case are:

   a. **WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.** ( Hereinafter referred to as "**WELLS FARGO**")believed to be organized under the laws of the UNITED STATES of AMERICA, and having no address, other than 101 N. PHILLIPS AVENUE, SIOX FALLS, SD. 57104. Hereinafter **WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.** is included in any reference to "Mortgage Defendants".

   b. **CR TITLE SERVICES, INC.** believed to be organized under the laws of the State of CALIFORNIA having an address of 1820 EAST 1ST STREET SUITE 300 SANTA ANA CA 92705. Hereinafter **CR TITLE SERVICES, INC.** is included in any reference to "Mortgage Defendants".

c. **CITIMORTGAGE INC.** is believed to be organized under the laws of the NEW YORK, and has a mailing address of PO BOX 30509 TAMPA FL 33631. and conducts business throughout the STATE OF CALIFORNIA. **CITIMORTGAGE INC.** is included in any reference to "Mortgage Defendants".

d. BILL GIRVIN with the GIRVIN GROUP of KELLER WLLIAMS REALTY licensed with the California Real Estate office having an address of **8525 Madison Avenue Suite 122 Fair Oaks, CA 95628** is included in any reference to "Mortgage Defendants".

e. John and Jane Does are Defendant and Petitioner who are unknown to Petitioner at this time, but who may be added appropriately to the complaint as they become known.

**FACTS OF THE CASE.**

Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

**Property in Question**: THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY and CITY OF SACRAMENTO, DESCRIBED AS FOLLOWS: COMMONLY KNOWN AS: **505 FRANESI WAY in SACRAMENTO, CALIFORNIA 95838**

8. Regarding Mortgage.

a. On or about May 19, 2009 for valuable consideration, Luella Vaughn Petitioner as borrower, made, executed and delivered to Defendant Wells Fargo Home Mortgage a written promissory note (UCC negotiable instrument) in the amount of **ONE HUNDRED AND SIXTY SIX THOUSAND NINE HUNDRED AND TWENTY DOLLARS. ($166,920.)**

b. **WELLS FARGO BANK N.A. Account # 650054079581998**

c. **CITIMORTGAGE INC. Account # 1120194274 AND 1120193878**

d. Petitioner made regular monthly payments and was in good standing until Mortgage Defendants in particular **WELLS FARGO and CITIMORTGAGE INC. lost** Petitioner's payment and Strong Armed Petitioner in to foreclosure.

e. Petitioner has written several correspondence in an good faith effort to correct the situation (Qualified Written Request) under the **FAIR DEBT COLLECTIONS PRACTICES ACT** (herein referred to as **"FDCPA"**), the California State **ROSENTHAL ACT** (hereinafter referred to as **"ROSENTHAL"**), **Real Estate**

**Settlement Procedures Act** (hereinafter referred to as "**RESPA**") and **Truth in lending Act (Regulation Z)** (hereinafter referred to as "**TILA**") the Defendants have refused to address Petitioner's request and have not properly responded which is required by both the **FDCPA** and **RESPA.** Mortgage Defendants have violated the Law by not responding.

**SUMMARY OF THE CASE**

9. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

10. The main part of the case involves Petitioner who has owned the property in question for approximately 5 years and is the owner of record of the property by deed.

11. Mortgage Defendants have attempted to **Strong Arm** Petitioner by concocting a scheme by which Wells Fargo and CitiMortgage INC. allegedly lost Petitioner's payment and then charged Petitioner attorneys fee and late fees in excessive amount and **Strong Arm** Plaintiff into default. To further the scheme, CitiMortgage INC. held almost $3,000 of Plaintiff's payments to put her further behind. This illegal scheme by Mortgage Defendants was an attempt to **Strong Arm** Petitioner into foreclosure and steal Petitioner's property as follows:

12. On May 4, 2009 Petitioner made a payment of $1224.00 to Wells Fargo on Capitol Avenue, Sacramento, California as she had previously done. After Petitioner had made her monthly payment as she had done since the inception of the loan. Then **Petitioner received a letter stating that Wells Fargo would accept the May 4th payment and that all future Payments should be forwarded to CitiMortgage INC without any prior notification as required by law.**

13. Then Petitioner received several calls from CitiMortgage Inc. employees asking "where the May Payment?" Petitioner explained to several different CitiMortgage INC employees that Petitioner made the May payment To Wells Fargo and that Wells Fargo had forwarded it to CitiMortgage Inc. at P.O Box 6006, The Lakes, Nevada 87140. CitiMortgage Inc. continued making the same inquiry over the next couple of weeks.

14. In an effort to resolve the situation, I called Wells Fargo in June of 2009. Wells Fargo stated that the check they sent to CitiMortgage Inc. was still outstanding and had not been cashed. I

asked Wells Fargo if they could reimburse the Petitioner and let Petitioner send the Check to CitiMortgage INC. directly and they said "no, that was not possible." Petitioner requested to speak to A supervisor, whom I asked if Wells Fargo could give me the number of the check so Petitioner could Forward the information to CitiMortgage Inc. but again Wells Fargo stated they could not release the number or any information about the check they had sent to CitiMortgage Inc.

15. One of Wells Fargo's supervisor stated to me to have CitiMortgage Inc. call Wells Fargo and Wells Fargo would give them the information about the check they sent for payment for May 2009 for the residence located 505 Franesi Way, Sacramento, California.

16. Petitioner keep making her monthly payments, but sent them to CitiMortgage Inc. at P.O Box 6006, The Lakes, Nevada 87140. Petitioner called CitiMortgage Inc. to ask them to please call/contact Wells Fargo regarding the outstanding/cancelled check, but CitiMortgage stated that Wells Fargo would have to call them.

17. After several calls to Wells Fargo, on or about July 15, 2009 Petitioner requested for Wells Fargo to cancel the outstanding check and reissue another check so that the May payment would no longer be an issue. Wells Fargo cancelled the check for the May 4, 2009 payment and reissued another check.

18. Petitioner received a letter from Wells Fargo stating that the outstanding check had been cancelled and another check was reissued (Exhibit "A"),

19. Petitioner received a letter from CitiMortgage Inc. (Exhibit "B") stating that they had received a stop payment on the May 2009 check that Wells Fargo had sent to CitiMortgage Inc. Petitioner believes this was the May 2009 check that CitiMortgage Inc. stated had not received, but they had not received a replacement second check.

20. Petitioner wrote a detailed letter to CitiMortgage Inc. explaining everything about the checks and attached a copy of the letter Wells Fargo had sent regarding the canceling and reissuing of the checks.

21. In another effort to resolve the situation, Petitioner on February 26, 2010 went to a Town Hall Foreclosure meeting in Sacramento, California in which CitiMortgage INC was one to

the participating lenders and talked to a CitiMortgage Inc. Representative named Pat.

22. Petitioner explained to him the situation and that is when Pat explained to me that they were holding my last payments over $3,500 for attorney fees and that Petitioner was now become a charge off.

23. Petitioner asked if I could have that in writing and Pat stated "***that he was not authorized to do that.***" Pat stated that they could not reduce my interest rate or help get my payments lower because it was already at 5.25%, but they could apply for forbearance.

24. Petitioner completed an application at the workshop and was subsequently contacted at my place of work to apply for forbearance to put the lost payment and late charges on the back end. Petitioner also faxed and mailed copies, but did not receive a response from CitiMortgage Inc. regarding the forbearance application.

25. Petitioner has contacted Mortgage Defendants via telephone and talk to numerous employees and has been given the responses; "***I don't have the authority do that***" "***the person you need to talk to is not in at this time***" and that "***the mistake on your account will be corrected.***"

26. In another good faith effort to resolve the issues, On February 2, 2010 Petitioner sent Mortgage Defendants correspondence (Qualified Written Request hereinafter **QRW**) of the purported debt (attached as Exhibit "C") under the **FDCPA** and **ROSENTHAL** titled "OFFER TO FULLY PAY" (via USPS certified mail) demanding validation of this purported debt under these Acts. under the **FDCPA** and **ROSENTHAL** Mortgage Defendants had 30 days to validate the purported debt Mortgage Defendants failed to respond within the 30 day time frame set by law, in retaliation Mortgage Defendants sent Petitioner notice "FORECLOSURE AND TRANSFER" although Petitioner had made her payments and was illegal since none of Mortgage Defendants are a "**Real Party in Interest**" nor did Mortgage Defendants reply to Petitioner's **QRW**

27. In another effort to deceive Petitioner, Mortgage Defendants' representative sent Petitioner a modification agreement which they did not have the legal right since none of Mortgage Defendants are a "**Real Party in Interest**" (Exhibit "D") and stated that the agreement had to be returned by April 26, 2010. Petitioner called Mortgage Defendants' representative to

request a later date, but the Mortgage Defendants' representative state that it had to be returned to their office by the date stated on the letter (April 26th 2010). Plaintiff returned the modification agreement to Mortgage Defendants' representative enveloped on April 22, 2010 by UPS overnight mail service.

28. The modification included a Delinquency Expense of $2,069.73 and Late Charges $405 09. These fees were applied to Petitioner's "mortgage account" funds of $3,559.26 without Petitioner's consent, permission or knowledge. Under the terms of the modification, the first payment was due on June 1, 2010 in the amount of $1,255.52. Petitioner has contacted Mortgage Defendants' representative since that time and was assured over the telephone that the modification was approved.

29. On or about May 11, 2010 Petitioner arrived home she discovered a notice taped to her front door stating 'Notice of Trustee's Sale. The sale was set for June 1, 2010.

30. Petitioner immediately called Mortgage Defendants' in particular CitiMortgage Inc. representative to ask why the notice was placed on her door and what about the agreement she had signed and sent in.

31. Mortgage Defendants' representative again stated that there was showing no amount due until June 1, 2010. The notice was faxed by Priority Posting on April 30, 2010 at 3:56 p.m., four days after the date that the modification agreement had to be signed and returned to Mortgage Defendants representative's office.

32. On May 12, 2010 Petitioner called Mortgage Defendant CitiMortgage Inc. and told them about the notice on the door. CitiMortgage said they had completed the modification on April 30th and they did not know what to tell me, because it was showing that Petitioner was current and the next payment was due June 1, 2010.

33. Petitioner went to the steps of the Courthouse located at 720 9th Street, Sacramento, California where the sale was to take place to see if the sale had been cancelled, but no one knew. Plaintiff then went online and the sale of Plaintiffs house was still posted to be sold as scheduled, June I, 2010.

34. Petitioner was not behind and yet was stringed along with promise to modify which

Mortgage Defendants did not have the authority to because Mortgage Defendants have securitized Petitioner promissory note are no longer the holders of the note nor a Real Parties in Interest.

35. Modification promise was tactic to further the **Strong Arm** Petitioner into default and illegally forecloses sale Petitioner's Property.

36. Petitioner filed suit in this Court and Mortgage Defendants rescinded the foreclosure.

37. Mortgage Defendants in particular **WELLS FARGO** stated in open Court **"we have rescinded the foreclosure and the case should be drop because of the rescinding and modification."** The Magistrate Judge agreed with as long as the Mortgage Defendants would work with Petitioner to resolve the situation.

38. Mortgage Defendants in particular **WELLS FARGO** promised to **"look into the situation and contact Petitioner with resolution."**

39. Petitioner next contact from Mortgage Defendants was second **Strong Arm** attempt. (different foreclosure action)

40. Mortgage Defendants second **Strong Arm** attempt forced Petitioner to file this action.

41. As such, Petitioner seeks the following relief:

   a. Petitioner requests that this Court a) Set aside Trustee Sale, b) Void Foreclosure Claim and c) Quiet Title in Petitioner favor.

   b. Petitioner requests that this Court award monetary damages to Petitioner for, a) Fraud, b) Material Misrepresentation, c) Violation of the **FDCPA**, **RESPA** and other violation of federal and state law.

   c. Petitioner requests that this Court grant declaratory relief declaring that none of the Mortgage Defendants are Real Parties in Interest and that none of the Mortgage Defendants have standing to enforce the Note or standing to foreclose.

## BACKGROUND FACTS

42. Petitioner hereby incorporates the allegations of all previous paragraphs as though those

allegations were fully set forth herein.

43. It is Petitioner's contention that promissory note is a negotiable instrument governed by the Uniform Commercial Code (hereinafter UCC) and Financial Accounting Standards (hereinafter FAS) and other Federal and State regulations.

44. Petitioner also contends that none of the Mortgage Defendants are Real Parties in Interest, but are Servicer and lack any standing to foreclose on Petitioner.

45. As a result there were numerous material misrepresentations made by Mortgage Defendants to Petitioner detriment. Further Petitioner contends that Mortgage Defendants have securitized Petitioner Mortgage/promissory note, as such, once an asset has been sold, the **seller (Mortgage Defendants) forever loses control of the asset.**

46. Mortgage Defendants fraudulently represented to the Court and Petitioner that they are in did a Real Parties in Interest and not a Servicer.

47. Petitioner contends that Mortgage Defendants did not disclose the true nature of their standing. The Sacramento County Recorder has no record of the transfer of ownership nor was Petitioner ever supplied any Mortgage transfer disclosure from **WELLS FARGO** to **CITIMORTGAGE INC.** nor was Petitioner supplied a transfer disclosure to the shareholders and investors as required by law.

48. Mortgage Defendants are not **Real Parties in Interest** thus they have no standing and/or authority to foreclose or seek remedy in this or any other CALIFORNIA court.

49. Ancillary points to this issue are: does any Mortgage Defendants have the statutory authority under CALIFORNIA law to foreclose on this particular property? Does the Mortgage Defendants have possession of the note with a duly executed assignment and evidence to demonstrate they are in fact a legitimate **Holder in Due Course** and or a **Real Parties in Interest**?

## CAUSE OF ACTION TO SET ASIDE FORECLOSURE CLAIM

50. Petitioner hereby incorporates the allegations of all previous paragraphs as though those

allegations were fully set forth herein.

51. Mortgage Defendants second **Strong Arm** attempt without addressing the actions that it stated it would address when Mortgage Defendants rescinded first foreclosure attempt. **FRAUD ON THE COURT** ***"In a judicial proceeding, a lawyer's or party's misconduct so serious that it undermines or is intended to undermine the integrity of the proceedings. Examples are bribery of a juror and introduction of fabricated evidence. Fed Civil Pro 2654; Judgment 372, 440"***

52. Mortgage Defendants have no authority by statute to foreclose on any real property in the State of CALIFORNIA and there by are have no legal stands to conduct a Non Judicial foreclosure in CALIFORNIA.

53. Mortgage Defendants, by Law are required to provide the original note (as previously requested and demanded) nor a **Real Parties in Interest** with the appropriate endorsements thereon to determine in accordance with the California statutes, who owns the right to receive payments on this loan and exercises the rights relating to said ownership, furthermore, to be able to determine if the notes have been sold to multiple parties, and thus enabling this court to avoid multiple litigations and trials.

54. Only the Note Owner/Holder or a **Real Parties in Interest** is authorized to collect payments and, in the event of a default, commence foreclosure proceedings, including authorizing the substitution of a Trustee. Until Defendants are able to provide the aforementioned documents, this Court should order that Mortgage Defendants have no standing to enforce the note or foreclose on Petitioner.

55. Mortgage Defendants have no authority by corporate charter and by-laws to foreclose on any real property in the State of CALIFORNIA or conduct a Non Judicial Foreclosure.

56. Mortgage Defendants are not Real Parties in Interest nor are they a beneficiary and therefore have no right of Claim and cannot benefit from any foreclosure of Petitioner property.

57. Mortgage Defendants are neither the "**Holder in Due Course**" nor a "**Real Parties in Interest** "of any financial instrument that gives Mortgage Defendants authority to exercise any claim against Petitioner.

58. The Honorable JUDGE CHRISTOPHER A. BOYKO of UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO EASTERN DIVISION, recently ruled in Case 1:07-cv-02282-CAB regarding 14 separate motions for foreclosure "In each of the above-captioned Complaints, the named Petitioner alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Petitioner. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Petitioner in the recorded chain of title/interest". "The Court's Amended General Order No. 2006-16 requires Petitioner to submit an affidavit along with the Complaint, which identifies Petitioner either as the original mortgage holder, or as an assignee, trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Petitioner is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Petitioner create a conflict. In every instance, then, Petitioner has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint."

59. JUDGE KATHLEEN M. O'MALLEY, UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO EASTERN DIVISION, IN RE FORECLOSURE ACTIONS, states: "Fifth Amended General Order No. 2006-16 (October 10, 2007). A foreclosure Petitioner, therefore, especially one who is not identified on the note and/or mortgage at issue, must attach to its complaint documentation demonstrating that it is the owner and holder of the note and mortgage upon which suit was filed. In other words, a foreclosure plaintiff must provide documentation that it is the owner and holder of the note and mortgage as of the date the foreclosure action is filed."

60. Banks and Mortgage companies have continuously attempted to illegally foreclosure without being the **holder in due course** or a Real Parties in Interest. So much so that US Federal Judge Samuel Bufford issued a standing order "Notice: NOTICE TO COUNSEL AND PARTIES IN INTEREST RELIEF FROM STAY MOTIONS, Beginning January 22, 2008 (and until further notice), Judge Bufford will require that a moving party on a relief from stay motion based on a promissory note bring to court for inspection the original promissory note. (Note: do not file the note" with the court – bring it to the hearing). Production of the note will be excused only under circumstances such as those provided in Evidence Code Rule 1004 or Cal. Comm. Code § 3301 (as shown by competent evidence). This requirement will

apply because developments in the secondary market for mortgages and other security interests cause the court to lack confidence that presenting a copy of a promissory note is sufficient to show that movant has a right to enforce the note or that it qualifies as a real party in interest (as required by Rules 7017 and 9014). Pursuant to Cal. Comm. Code § 3412, an obligation to pay is only owing to a "person entitled to enforce an instrument" (as defined in § 3301). Thus, the court cannot admit copies of promissory notes in these circumstances under Evidence Code § 1003."

61. Anything short of the full disclosure of all known pertinent facts is a fraud upon the court and renders void any decree thereafter entered. Coppinger v. Coppinger, 130 Colo. 175, 274 P.2d 328 (1954); Weber v. Williams, 137 Colo. 269, 324 P.2d 365 (1958)

62. To simply go through the form of legalism without a fair disclosure of existing known facts is of no avail. Coppinger v. Coppinger, 130 Colo. 175, 274 P.2d 328 (1954); Weber v. Williams, 137 Colo. 269, 324 P.2d 365 (1958).

## CAUSE OF ACTION FRUAD

63. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

64. Petitioner states that Defendants Mortgage Defendants actions of fraud and deceit have foundation in Taylor v. State Compensation Insurance Fund, 175 Mont. 432, 913 P.2d 1242 (1996) where in order to sustain a claim of fraud, claimant was required to plead and prove each of the nine elements of fraud: (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation; (5) the speaker's intent it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury caused by reliance on the representation.

65. Petitioner contends that all of the above elements exist and believes and having knowledge and thereon alleges that Mortgage Defendants sell of the Promissory Note, and

accompanying MORTGAGE document were fraudulent presented to Petitioner. The relevant information contained therein was false and materially deceptive, and unfair business trade practices were used to conceal the true Real Parties in Interest

(1) A representation:

Mortgage Defendants represented to Petitioner that they were a Real Parties in Interest and not a Servicer.

(2) Falsity of the representation:

Mortgage Defendants are a Servicer, but Mortgage Defendants representation that they were a Real Parties in Interest.

(3) Materiality of the representation:

Mortgage Defendants misrepresentations were material because the facts are that they are a Servicer under the term and not a real parties in interest and knew or should have known.

(4) Speaker's knowledge of the falsity of the representation:

The Mortgage Defendants falsely stated the they were a real parties in interest and not a Servicer

(5) The speaker's intent it should be relied upon:

Mortgage Defendants words were relied upon by Petitioner in good faith. Consequently Petitioner was deceived into the believe that Mortgage Defendants was a real parties in interest and had the authority to foreclose on Petitioner

(6) The hearer's ignorance of the falsity of the representation:

Petitioner was not privy to the information that Mortgage Defendants was a service provider and was not in an equal or similarly situated business posture as Mortgage Defendants at the time of the foreclosure, and was taken advantage of by the unfair business practices brought on by Mortgage Defendants.

(7) The hearer's reliance on the representation:

The words and writings of Mortgage Defendants were relied upon to the detriment of the Petitioner as Petitioner was fraudulently deceived into believing that Mortgage Defendants were "**Real Parties in Interest**" and not a service provider covered under the **FDCA** and the **TILA**.

(8) The hearer's right to rely on the representation:

Petitioner relied upon Mortgage Defendants' actions, writings and words that Petitioner had a right to rely on, and because Petitioner did rely upon the acts and inducement by Mortgage Defendants who had superior knowledge, and because it is an industry standard operation, Petitioner relied upon these representations as were made and relied upon to Petitioner detriment.

(9) The hearer's consequent and proximate injury caused by reliance on the representation:

Petitioner's reliance upon fraud and Illegally Strong Arm attempt to foreclosure in statements and writings provided to her by parties in superior position precluded Petitioner from knowing the Mortgage Defendants true Servicer position. Petitioner's reliance gave forth to consequent and proximate injuries for:

a) Financial instability of the home unit due to Mortgage Defendants' foreclosure actions.

b) Interfering with financial stability.

c) Loss of use and enjoyment of home.

## <u>CAUSE OF ACTION Violation of Financial Accounting Standards (FAS) and The Fair Debt Collections Practices Act (FDCPA)</u>

66. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

67. To prevent accounting fraud, various governing bodies created Financial Accounting Standards (FAS). Accounting is a very important area that needs to be regulated tightly to

prevent companies from cooking the books.

68. Specifically, FAS 140 was created to govern the sale and securitization of a negotiable instrument. One of the things about FAS 140 is the rule governing a sale. FAS 140 states that once an asset has been sold, the ***seller forever loses control of the asset.***

69. When Mortgage Defendants sold the loan to a shareholders and investors, they forever lost their ability to enforce, control or otherwise foreclose on Petitioner's property. Mortgage Defendants are no longer the "**Holder in due Course**" or a "**Real Party in Interest.**" They are just a Servicer.

70. Mortgage Defendants represented to the Court and Petitioner that they were the "**Holder in due Course**" or a "**Real Party in Interest**" and had the authority to enforce the note. Mortgage Defendants never disclosed to Petitioner that they were a debt collector and who or what entity they were attempting to collect on behalf.

71. Petitioner sent Mortgage Defendants a Qualified Written Request (**QRW**) which Mortgage Defendants defaulted by not properly responding in accordance with **FDCPA**

## CAUSE OF ACTION WRONGFUL FORECLOSURE

72. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

73. Only a "**Holder in due Course**" or a "**Real Party in Interest**" has authority to enforce the note. Since Mortgage Defendants sold the note they can only take on the position of Servicer can only collect and disburse proceeds. The shareholders and investors, who purchased the note, are the "**Real Party in Interest.**"

74. The powers of the Trustee are not "**Real Party in Interest**" Because of the special IRS rule, the Trustee is not the real and beneficial party of interest because the Mortgage Defendants do not own the notes, the shareholders and investors do; therefore they cannot enforce the promissory note.

75. In other words, they can't have their cake and eat it, too. They can either accept double taxation or let the REMIC (stands for ***Real Estate Mortgage Investment Conduit.***) hold the centralized power, or they can distribute the tax liabilities to the shareholders and

investors, in which case they have also distributed the parties of interest. Mortgage Defendants have not noticed the IRS that they own the note nor paid any taxes on it.

76. Mortgage Defendants chose to have a distributed party of interest to avoid paying taxes twice. No one entity is the real and beneficial party in interest, each and every shareholder and investor owns a tiny portion of Petitioner's loan along with hundreds and some cases thousand of loans.

77. **A promissory note is only enforceable in its whole entirety if the shareholder and investor each owns a tiny part of the promissory note. No one of shareholder or investor has the Authority to foreclose.**

## Violation of the Truth in lending Act "TILA" (Regulation Z)

78. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

79. Mortgage Defendants are in direct violation of TILA by their failure to disclose transfer of mortgage

226.39 Mortgage transfer disclosures.

(a) Scope. The disclosure requirements of this section apply to any covered person except as otherwise provided in this section. For purposes of this section: (1) A "covered person" means any person, as defined in §226.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment, or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the lean or it is assigned to the servicer solely for the administrative convenience of the servicer in servicing the obligation.

(2) A "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

(b) Disclosure required. Except as provided in paragraph (c) of this section, any person that becomes a covered person as defined in this section shall mail or deliver the disclosures required by this section to the consumer on or before the 30th calendar day following the acquisition date. If there is more than one covered person, only one disclosure shall be given and the covered persons shall agree among themselves which covered person shall comply with the requirements

that this section imposes on any or all of them.

(1) Acquisition date. For purposes of this section, the date that the covered person acquisition recognized in the book and records of the acquiring party.

(2) Multiple consumers. If there is more than one consumer liable on the obligation, a covered person may mail or deliver the disclosures to any consumer who is primarily liable.

© Exceptions. Notwithstanding paragraph (b) of this section, a covered person is not subject to the requirements of this section with respect to a particular mortgage loan if:

(1) The covered person sells or otherwise transfers or assigns legal title to the mortgage loan on or before the 30th calendar day following the date that the covered person acquired the mortgage loan; or

(2) The mortgage loan is transferred to the covered person I connection with a repurchase agreement and the transferor that is obligated to repurchase the loan continues to recognize the loan as an asset on its own books and records. However, if the transferor does not repurchase the mortgage loan, the acquiring party must make the disclosures required by §226.39 within 30 days after the date that the transaction is recognized as an acquisition in its books and records.

(d) Content of required disclosures. The disclosures required by this section shall identify the loan that was acquired or transferred and state the following:

(1) The identity, address, and telephone number of the covered person who owns the mortgage loan. If there is more than one covered person, the information required by this paragraph shall be provided for each of them.

(2) The acquisition date recognized by the covered person.

(3) How to reach an agent or party having authority to act on behalf of the covered person (or persons). Which shall identify a person (or persons) authorized to receive legal notices on behalf of the covered person and resolve issues concerning the consumer's payments on the loan. However, no information is required to be provided under this paragraph if the consumer can use the information provided under paragraph (d)(1) of this section for these purposes. If multiple person are identified under this paragraph, the disclosure shall provide contact information for each and indicate the extent to which the authority of each agent differs. For purposed of this paragraph (d)(3), it is sufficient if the covered person provides only a telephone number provided that the consumer can use the telephone number to obtain the address for the agent or other person identified.

(4) The location where transfer of ownership of the debt to the covered person is recorded. However, if the transfer of ownership has not been recorded in public records at the time the disclosure is provided, the covered person complies with this paragraph by stating this fact.

(e) Optional disclosures. In addition to the information required to be disclosed under paragraph

(d) of this section. A covered person may, at its option, provide any other information regarding the transaction.

80. The Sacramento County Recorder has no record of the transfer of ownership nor was Petitioner ever been supplied any Mortgage transfer disclosures that Mortgage was transferred to the shareholders and investors as required by law. **Winger v EMC Mortgage Corporation, 103 Cal. App. 4th 1125; 127 Cal.Rptr. 2d 685 (2002)**, in which a mortgagor neglected to provide notice required by the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. 2601 et seq.

## Fraudulent Misrepresentation

81. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

82. ***"A false statement that is known to be false or is made recklessly- without knowing or caring whether it is true or false- and that is intended to induce a party to detrimentally rely on it."*** **Black's Law Dictionary 9th edition page 1091.**

83. Mortgage Defendants knowingly represented to the Court and Petitioner to her detriment that they are a "**Holder in due Course**" or a "**Real Party in Interest**" and have the standing to foreclose, but in fact are only a Servicer as defined by TILA. To prevent accounting fraud, various governing bodies created Financial Accounting Standards (FAS). FAS and regulated tightly to prevent companies from committing Fraud. Specifically, FAS 140 was created to govern the sale and securitization of a negotiable instrument. FAS 140 is the rule governing a sale of negotiable instruments. A transaction can only be recognized as a sale if it is sold to a party at arm's length. In other words, you cannot sell an asset to yourself (Enron). Also, it says, that once an asset is sold, the seller forever loses the ability to control the asset as with the Mortgage Defendants. The sell transfers all assets to the investors, shareholders, who in turn become the "**Holder in due Course**" or a "**Real Party in Interest.**" Mortgage Defendants (as Servicer) present that they are the "**Holder in due Course**" or a "**Real Party in Interest**" is **Fraudulent Misrepresentation.**

## RELIEF REQUESTED

84. Petitioner hereby incorporates the allegations of all previous paragraphs as though those allegations were fully set forth herein.

85. WHEREFORE, Petitioner requests the following relief requested that this Court:

86. Require the Mortgage Defendants to answer this complaint, admitting and denying with particularity each and every allegation herein or suffer the ramifications of a default for failure to answer and an injunction be ordered preventing any Defendant from moving against the property, contacting any tenants, transferring any property or in any way adversely effecting Petitioners interest in the property in any manner.

87. That any so-called foreclosure claim and trustee sale which could result in the transfer of property from Petitioner to Mortgage Defendants be deemed null and void.

88. That this Court issues an Order Quieting Title in favor of this Petitioner and/or declaring that non of the Mortgage Defendants are a "**Holder in due Course**" or a **"Real Party in Interest."**

89. That all issues be tried by a Jury herein, actually be tried before and by a full Jury as at Common-Law within the Nisi-Prius Civil Jurisdiction, with the verdict to be binding upon this Court and all parties as Constitutionally Required by "Due Course of Law".

90. Petitioner seeks that the original Promissory Note be cancelled under election of remedies for Fraud in Fact and a declaration and the determination that Petitioner **LUELLA VAUGHN** is the rightful holder of title to the property.

91. Petitioner seeks that Mortgage Defendants be ordered to pay damages to be determined by the Court or Jury for Fraud.

92. That Defendants known and unknown at this time including Mortgage Defendants be declared to have no estate, right, title or interest in said property, and that **LUELLA VAUGHN** is entitled to quiet and undisturbed possession of the property as described ante.

93. In the alternative Petitioner seeks an award under election of remedies for compensatory damages in the amount of $166,920. Plus interest, plus three times punitive damages.

94. For compensatory damages to be determined and apportioned amongst the various

Mortgage Defendants, for time spent in legal research and composition of this action comparable to standard Attorneys allowances, from each and every Defendant on all counts.

95. For Punitive Damages against all Mortgage Defendants as applicable, as well as, compensatory and punitive damages under **FDCPA and RESPA** in an amount to be determined at trial and sufficient to send a message that such practices are repugnant to the people of SACRAMENTO County and the State of CALIFORNIA.

96. For Punitive Damages in an amount sufficient to send a message that such practices are repugnant to the people of SACRAMENTO County and the State of CALIFORNIA.

97. An order granting injunctive relief from any parties moving against the Petitioner and/or her real estate, including the property in question, without first proving to this Court that all the lawful requirements and statutory requirements for foreclosure and transfer of property have been met.

98. Petitioner seeks determination as of the date of original filing.

99. Petitioner petitions this court to make a determination on this petition.

All Rights Reserved

**LUELLA VAUGHN**
By: **Luella Vaughn**, agent, Plaintiff/Petitioner: UCC 3-402(b)(1)

By: Luella Vaughn
Signature: **Luella Vaughn**, Plaintiff/Petitioner, lawful woman

# ACKNOWLEDGMENT

State of California
County of Sacramento } ss.

On 10/31/11 before me, Saundra Marquardt, Notary Public, personally appeared **LUELLA VAUGHN**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(seal

SAUNDRA MARQUARDT
COMM. #1784025
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES DEC. 8, 2011

Saundra Marquardt
Signature

# EXHIBIT "A"

WELLS FARGO HOME MORTGAGE

Wells Fargo Home Mortgage
MAC X2302-019
1 Home Campus
Des Moines, IA 50328-0001

July 29, 2009

Luella Vaughn
P.O. Box 188648
Sacramento, CA 95818

Dear Luella Vaughn:

RE: Loan Number 708-0093143253

Wells Fargo Home Mortgage (WFHM) received correspondence regarding the above referenced loan. I have reviewed the information presented and would like to provide you with the details of my research.

Our records indicate on May 5, 2009, the above referenced loan was transferred CitiMortgage, Inc. On May 7, 2009, we mailed check number 914762 to CitiMortgage, Inc. in the amount of $1,221.11 for your May 2009 payment. This check was not cashed. As requested we placed a stop payment and reissued check number 947080 to CitiMortgage, Inc. in the amount of $1,221.11 on July 14, 2009, and mailed to CitiMortgage, Inc. the same day. As of the date of this letter, the check is still outstanding.

For further information or questions on your mortgage loan please contact CitiMortgage, Inc. at the following:

CitiMortgage, Inc.
P.O. Box 6006
The Lakes, NV 88901-6006
(800) 695-0384

We regret any frustration or inconvenience you may have experienced. If you have any additional questions or need clarification regarding the information provided, please contact Written Customer Contact directly at (877) 501-0871, extension 40489. We are available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m., Central Time.

Sincerely,

Written Customer Contact

Authorized users may also access loan information via www.wellsfargo.com, or contact our Customer Service Department at (866) 234-8271. Representatives are available for assistance Monday through Friday, 6:00 a.m. to 10:00 p.m.; and Saturday, 8:00 a.m. to 2:00 p.m., Central Time.

PC003/KTJ/gel08412

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.

# EXHIBIT "B"

CitiMortgage

citi

www.citimortgage.com

07/20/09

LUELLA VAUGHN
505 FRANESI WAY
SACRAMENTO CA 95838-2695

Dear CitiMortgage Client(s):

We are writing to inform you that your bank returned your check/draft number 914762 in the amount of $1,221.11 because of payment stopped.

This matter requires your immediate attention. The reversal of this payment may have caused your account to become delinquent and could result in your delinquency being reported to our subscribing credit reporting agencies.

To correct this matter, the total amount due of $2,515.20 must be sent today in certified funds. Currently, your 06/01/09 payment is due. Please remit your payment to the following address:

CitiMortgage, Inc.
P.O. Box 6006
The Lakes, NV 88901-6006

We appreciate your prompt attention to this matter. To contact us you may visit our website at www.citimortgage.com or access our Automated Account Information Line, which is available 24 hours a day at 1-800-283-7918*. Customer Service Associates are available 7 days a week:

Monday - Friday 7:00 a.m. to 12:00 a.m., ET
Saturday 8:00 a.m. to 7:00 p.m., ET
Sunday 12:00 p.m. to 11:00 p.m., ET

When contacting us, refer to your mortgage account number, 1120193878.

We value your business and look forward to serving you in the future.

Sincerely,

Customer Service Department

090720B0010658

©2008 CitiMortgage, Inc. CitiMortgage, Inc. does business as Citicorp Mortgage in NM. CitiMortgage, Inc. is an equal housing lender. Citi, Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any information obtained will be used for that purpose.

# EXHIBIT "C"

# EXHIBIT "C"

2/21/10

CITIMORTGAGE, INC
PO BOX 6006
THE LAKES, NV 88901-6006

**Re: Account # 11201938778-1**

**Dear CITIMORTGAGE**

OFFER to fully pay/ discharge accompanying/attached Bill/Claim of debt on condition that Claimant complies within 5 days of receipt with this;

**Demand to Cease and Desist Collection Activities Prior to Validation of purported Debt**

Pursuant to the **Fair Debt Collection practices Act, 15 U.S.C. 1601, 1692 et** This constitutes timely written notice that I decline to pay the attached erroneous purported debt which is unsigned and unattested and which I discharge and cancel in its entirety, without dishonor, on the grounds of breach, false representation and fraud.

15 U.S.C. 1692 (e)states that a false, deceptive, and misleading representation, in connection with the collection of any debt, includes the false representation of the character or legal status of any debt and further makes a threat to take any action that cannot legally be taken a deceptive practice.

Such Notice omits information which should have been disclosed, such as vital citations, disclosing the agency's jurisdictional and statutory authority. Said Notice further contains, false, deceptive and misleading representations, and allegations intended to intentionally pervert the truth for the purpose of inducing one, in reliance upon such, to part with property belonging to them and to surrender certain substantive legal and statutory rights. To act upon this Notice would divest one of his and or her property and their prerogative rights, resulting in a legal injury.

Pursuant to 15 U.S.C. 1692 (g) (4) **Validation of Debt,** if you have evidence to validate your claim that the attached presentment does not constitute fraudulent misrepresentation and that one owes this alleged debt, this is a demand that, within 30 days, you provide such validation and supporting evidence to substantiate your claim. Until the requirements of the **Fair Debt Collection Practices Act** have been met and your claim is validated, you have no jurisdiction to continue any collection activities.

This is constructive notice that, absent the validation of your claim within 30 days, you must cease and desist any and all collection activity and prohibited from contacting me, through the mail, by telephone, in person, at my home, or at my work. You are further prohibited from contacting, my employer, my bank, or any other third



EXHIBIT C

party. Each and every attempted contact, in violation of this Act, will constitute harassment and defamation of character will subject your agency and/or board, and any and all agents in his/her/their individual capacities, who take part in such harassment, and defamation, to a liability for actual damages as well as statutory damages of up to $1,000 for each and every violation, and a further liability for legal fees to be paid to any counsel which I may retain. Further, absent such validation of your claim, you are prohibited from filing any notice of lien and/or levy and are barred from reporting any derogatory credit information to any Credit Reporting Agency, regarding this disputed purported debt.

Further, pursuant to the **Fair Debt Collection Practices Act,** 15 U.S.C. 1692 (g), as you are merely an "agency," or board, acting on someone else's behalf, this is a demand that you provide the name of the original "principal" or "holder in due course," for whom you are attempting to collect this debt.

**I, hereby, attest that, to the best of my knowledge and belief the above information is true and correct.**

Luella Vaughn

**LUELLA VAUGHN**
**505 FRANESI WAY**
**Sacramento, CA 95838-2695**

EXHIBIT C

# EXHIBIT "D"

EXHIBIT "D"

citi

April 19, 2010

..UELLA VAUGHN
505 FRANESI WAY
SACRAMENTO, CA, 95838-2695

RE: CMI # 1120193878

Dear Borrowers:

Enclosed is a Modification Agreement necessary to change the interest rate, loan product, term and/or monthly payment on your mortgage loan. This document must be executed by you and the Lender in order to modify your mortgage. To expedite the Modification, we may have ordered a title update to ensure that our lien is protected. CitiMortgage may choose not to proceed with the modification if other liens exist.

Please read the Modification Agreement carefully. It must be signed and dated by all obligated parties. If indicated in your Modification Agreement, you must also ensure that two people who witnessed your signature also sign the Agreement (non-married individuals must have two witnesses per individual).

Please be advised that all of the signed modification documents are to be returned and received by CMI no later than **April 26, 2010** or the modification terms may be voided at the discretion of CMI. If the documents are not received by that date, there will be no extensions of time granted, and your file will be closed without further notice or consideration.

Your new monthly terms are shown below. If you have been approved for a stepped rate modification, the information below reflects the first year terms only. The change in your principal and interest payment will be reflected upon receipt of the modification agreement.

PAYMENT INFORMATION

| | | NEW | CURRENT |
|---|---|---|---|
| 1. | Principal Balance | 174,410.96 | 166,149.11 |
| 2. | Interest Rate | 5.12500 | 5.25000 |
| 3. | Principal & Interest Payment | 949.64 | 921.74 |
| 4. | Taxes and/or Insurance Escrow | 305.88 | 299.00 |
| 5. | Total Payment | 1,255.52 | 1,220.74 |
| 6. | Loan Maturity Date | 05/01/40 | 04/01/39 |
| 7. | Next Payment Date | 06/01/10 | |

Please return your executed document(s) in the envelope provided. Please consult a tax advisor for information concerning the tax treatment of the capitalized interest amount. If you have any other questions or need further assistance, please contact Angelica Bacon at 1-866-713-4784, and refer to your loan number shown above. Thank you for your cooperation.

Sincerely,

Angelica Bacon
Loan Processor



EXHIBIT D

## MODIFICATION CONDITIONS

IF CHECKED, THE FOLLOWING MUST BE RETURNED WITH YOUR EXECUTED MODIFICATION AGREEMENT:

{ X } Cashier's check or money order in the amount of $0.00 due no later than April 26, 2010
{ } Modification documents must be notarized
{ } Funds in the amount of $___, representing all or a portion of the first payment due no later than April 26, 2010
{ } Subordination Agreement(s) executed by subordinate lien holder(s).
{ } Executed Bankruptcy Rider
{ } Copy of Death Certificate
{ } Copy of Marriage Certificate
{ } Copy of Divorce Decree
{ } All applicable Borrowers sign and return attached Good Faith Estimate of Settlement Charges
{ } All applicable Borrowers sign and return attached Federal Truth-in-Lending Disclosure
{ } All applicable Borrowers sign and return attached HUD1 Settlement Statement
{ } All applicable Borrowers sign and return Assumption Agreement, Release of Co-Obligor or Addition of Co-Obligor.
{ } Copy of recorded Quit Claim Deed.
{ } All applicable Borrowers individually sign and return attached W-9 Request for Tax Payer Identification and Certification
{ } All applicable Borrowers sign and return Seller's forwarding address
{ } Borrowers to execute the attached Private Mortgage Insurance Agreement

**As of 04/16/10, "unapplied" funds of $3,559.26 are currently being held in your mortgage account. Your unapplied funds, along with any funds due with your Modification Agreement, will be disbursed as follows:**

| | |
|---|---|
| **Modification Fee** | **$ 0.00** |
| **Late Charges** | **$ 405.09** |
| **Escrow Advance Balance** | **$ 0.00** |
| **Escrow Required** | **$ 0.00** |
| **Accrued Interest** | **$ 1,084.44** |
| **Principal** | **$ 0.00** |
| **Other** | **$ 0.00** |
| **Attorney Fees** | **$ 0.00** |
| **Title Fees** | **$ 0.00** |
| **Delinquency Expense** | **$ 2,069.73** |

The above amounts may differ at the time of booking the new modification terms due to the time period between the above date and the booking date. Payments can be sent via Western Union Quick Collect:

Code City - CMI
Code State - MO
Reference your loan # 1120193878
Western Union charges a fee for this service.

When Recorded Return To:
CitiMortgage, Inc.
Attn: Loss Mitigation Department #0010
5280 Corporate Drive
Frederick, MD 21703

Loan # 1120193878

**LOAN MODIFICATION AGREEMENT**
**(PROVIDING FOR FIXED INTEREST RATE/CAPITALIZATION)**

This Loan Modification Agreement ("Agreement"), made 04/16/10, between LUELLA VAUGHN. ("Borrower") residing at 505 FRANESI WAY SACRAMENTO CA, 95838-2695 and CitiMortgage, Inc. ("Lender") having offices at 5280 Corporate Drive, Frederick, MD 21703 and amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") dated 03/17/09 and recorded on 03/26/09, Document number 20090326, Book number 209, Page 10 in the Official Records of SACRAMENTO County, California and (2) the Note bearing the same date as, and secured by the Security Instrument , which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 505 FRANESI WAY, SACRAMENTO CA, 95838, the real property described as being set forth as follows:

(SEE ATTACHED LEGAL DESCRIPTION)

In consideration of the mutual promises and agreements exchanged , the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 04/16/10, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $ 166,149.11. The Borrower acknowledges that interest has accrued but has not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses in the total amount of $ 8,261.85, have been added to the indebtedness under the terms of the Note and Security Instrument and the loan re-amortized over 360 months. When payments resume on 06/01/10, the New Unpaid Principal Balance will be $ 174,410.96.

2. The Borrower promises to pay the New Unpaid Principal Balance, plus Interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.125% effective 05/01/10 (the "Interest Change Date"). The Borrower promises to make monthly payments of principal and interest of U.S. $ 949.64 (which does not include and amounts required for Insurance and/or Taxes) beginning on 06/01/10 and continuing thereafter on the same date of each succeeding month until principal and interest are paid in full.

If on 05/01/40 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay those amounts in full on the Maturity Date. All other terms stated in the Note remain the same.

The Borrower will make such payments at Post Office Box 9481, Gaithersburg, MD 20898-9481, or at such other place as the Lender may require.

3. If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument.

If the Lender exercises this option , the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.



EXHIBIT D page 3 of 10

Legal Description

## EXHIBIT "A"

All that certain real property situated in the County of Sacramento, State of California, described as follows:

(City of Sacramento)

Lot 37, as shown on the Map entitled, "Chardonnay", recorded in Book 209 of Maps, Page 10, Sacramento County Records.

Assessor's Parcel Number: **237-0610-037-0000**

4. The Borrower also will comply with all the other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all the payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make the under Security Instrument; however, the following terms and provisions are forever canceled, null, and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and,

(b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, or part of, the Note and Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by and comply with, all of the terms and provisions thereof, as amended by this Agreement.

6. It is mutually agreed that the Security Instrument shall constitute a first lien upon the premise and that neither the obligation evidencing the aforesaid indebtedness nor the Security Instrument shall in any way be prejudiced by this Agreement, but said obligation and Security Instrument and all the covenants and agreements thereof and the rights of the parties thereunder shall remain in full force and effect except as herein expressly modified.

IN WITNESS WHEREOF, the parties have signed, sealed and delivered this agreement on the date above written.

______ ______________________
Date Borrower - LUELLA VAUGHN

______ ______________________
Date Borrower -

______ ______________________
Date Borrower -

______ ______________________
Date Borrower -

**CitiMortgage, Inc.**

______ By: ______________________

Date Lender - **William A Hapeman**
**Assistant Vice President**



EXHIBIT D page 5 of 10

STATE OF California
COUNTY OF SACRAMENTO

EFFECTIVE DATE: 04/16/10
BORROWERS: LUELLA VAUGHN
PROPERTY: 505 FRANESI WAY
SACRAMENTO, CA 95838

LOAN NUMBER: 1120193878

## COMPLIANCE AGREEMENT

The undersigned Borrower(s), in consideration of the loan modification of the above-described loan by CitiMortgage, Inc. and/or Assigns (Lender) in the amount of $ 174,410.96,as evidence by a Promissory Note Dated 03/17/09 and secured by a Deed of Trust or Mortgage of even date against real property commonly known as: 505 FRANESI WAY, SACRAMENTO CA, 95838 agrees to fully cooperate with any reasonable requests made by the Lender, or its agent, (1) to complete such loan modifications; or (2) to enable Lender to sell, convey, seek a guaranty or obtain insurance for, or market said loan to any purchaser, including but not limited to, any investor or institution, the Federal National Mortgage Association, The Government Nation Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any municipal bonding authority, or to ensure enforceability of loan if kept in Lender's own portfolio. These requests may include, but are not limited to, all changes, corrections, re-executions or modifications of any documents related to such loan, or execution of any additional documents as may be required.

The undersigned will comply with all such requests within thirty (30) days from the date they are made by the Lender or it's agent. If Borrower(s) fails to meet its obligations hereunder, Borrower(s) agrees to be liable for and to pay or Reimburse Lender for all costs including, but not limited to, actual expenses, legal fees, court costs, and marketing Losses incurred or sustained by Lender to enforce its rights hereunder and caused by such failure.

DATED this ________ day of __________________, 20__.

_____________________________ Borrower - LUELLA VAUGHN

_____________________________ Borrower -

_____________________________ Borrower -

_____________________________ Borrower -

EXHIBIT D Page 6 of 10

# NAME AFFIDAVIT

DATE: 04/16/10

SERVICER: **CitiMortgage, Inc.**

BORROWER'S: LUELLA VAUGHN

PROPERTY ADDRESS 505 FRANESI WAY
SACRAMENTO, CA 95838

LOAN NUMBER: 1120193878

The undersigned, LUELLA VAUGHN ____________________
certifies that he/she is one and the same person as:

| | |
|---|---|
| LUELLA VAUGHN | ____________ |
| ____________ | ____________ |
| ____________ | ____________ |
| ____________ | ____________ |

as signed on any of the documents executed in connection with this real estate transaction.

____________________ Borrower - LUELLA VAUGHN

____________________ Borrower -

**NOTICE TO BORROWER**
***NOT IN***
**SPECIAL FLOOD HAZARD AREA**

Borrower: LUELLA VAUGHN
Loan#: 1120193878

Property Location: 505 FRANESI WAY
SACRAMENTO, CA 95838-2695

This Notice Date is as of: 04/16/2010

Attached is the completed Standard Flood Hazard Determination Form that indicates that the improved real estate or mobile home securing you loan is not located in the area designated by the Director of the Federal Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this determination, you will not be required to obtain mandatory flood insurance in connection with the making of your loan.

However, your home may be near a SFHA. As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

If, however, at anytime during the term of your loan the improved real estate or mobile home securing your loan is, due tore-mapping by FEMA or otherwise, located in an area that has been identified by the Director of FEMA as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood insurance in amount less than the amount we advise you is necessary, we shall purchase such flood insurance on you behalf at you expense, as we are authorized to do in accordance with the provisions of the Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicant(s), herby understand and agree to all the above.

| | | | |
|---|---|---|---|
| Borrower/Applicant | Date | Borrower/Applicant | Date |
| Borrower/Applicant | Date | Borrower/Applicant | Date |
| Borrower/Applicant | Date | Borrower/Applicant | Date |

EXHIBIT D page 8 of 10

DEPARTMENT OF HOMELAND SECURITY
FEDERAL EMERGENCY MANAGEMENT AGENCY
**STANDARD FLOOD HAZARD DETERMINATION FORM (SFHDF)**

*See The Attached Instructions*

*O.M.B. No. 1660-0040*
*Expires December 31, 2011*

**SECTION I - LOAN INFORMATION**

| 1. LENDER NAME AND ADDRESS | 2. COLLATERAL *(Building/Mobile Home/Personal Property)* PROPERTY ADDRESS *(Legal Description may be attached)* |
|---|---|
| C..TIMORTGAGE, INC dba CITICORP<br>MTG IN NM<br>1000 TECHNOLOGY DRIVE<br>O'FALLON, MO 63368<br><br>Company: 09050049<br>Branch: 6446/CORR | 505 FRANESI WAY<br>SACRAMENTO, CA 95838<br><br>Borrower: VAUGHN, LUELLA |

| 3. LENDER ID. NO. | 4. LOAN IDENTIFIER | 5. AMOUNT OF FLOOD INSURANCE REQUIRED |
|---|---|---|
| 7213 | 001120193878 | $ |

**SECTION II**

**A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION**

| 1. NFIP Community Name | 2. County(ies) | 3. State | 4. NFIP Community Number |
|---|---|---|---|
| SACRAMENTO, CITY OF | SACRAMENTO | CA | 060266 |

**B. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) DATA AFFECTING BUILDING/MOBILE HOME**

| 1. NFIP Map Number or Community-Panel Number (Community name, if not the same as "A") | 2. NFIP Map Panel Effective/ Revised Date | 3. LOMA/LOMR | 4. Flood Zone | 5. No NFIP Map |
|---|---|---|---|---|
| 060266 0065G | 12/08/08 | ☐ Yes ____ Date | X500 | |

**C. FEDERAL FLOOD INSURANCE AVAILABILITY** *(Check all that apply)*

1. [x] Federal Flood insurance is available *(community participates in NFIP).* [x] Regular Program [ ] Emergency Program of NFIP
2. [ ] Federal Flood insurance is not available because community is not participating in the NFIP
3. [ ] Building/Mobile Home is in a Coastal Barrier Resources Area (CBRA) or Otherwise Protected Area (OPA), Federal Flood insurance ma not be available. CBRA/OPA designation date: ________

**D. DETERMINATION**

**IS BUILDING/MOBILE HOME IN SPECIAL FLOOD HAZARD AREA (ZONES CONTAINING THE LETTERS "A" OR "V")? [ ] YES [x] NO**

**If yes, flood insurance is required by the Flood Disaster Protection Act of 1973.**
**If no, flood insurance is not required by the Flood Disaster Protection Act of 1973.**

**E. COMMENTS** *(Optional):*

THIS FLOOD DETERMINATION IS PROVIDED TO THE LENDER PURSUANT TO THE FLOOD DISASTER PROTECTION ACT. IT SHOULD NOT BE USED FOR ANY OTHER PURPOSE.

**This determination is based on examining the NFIP map, any Federal Emergency Management Agency revisions to it, and any othe information needed to locate the building/mobile home on the NFIP map.**

**F. PREPARER'S INFORMATION**

| NAME, ADDRESS, TELEPHONE NUMBER *(If other than Lender)* | DATE OF DETERMINATION |
|---|---|
| CitiMortgage, Inc. Flood Services<br>1000 Technology Drive<br>O'Fallon, MO 63368<br>floodservices@citi.com | 05/06/09 at 9:07 AM CDT<br><br>Cert #: 0905144854<br><br>*** LIFE-OF-LOAN *** |

EXHIBIT D page 9 of 10

FEMA Form 81-93, DEC 08 AB85549

EXHIBIT D Page 10 of 10